UNITED STATES of America, Plaintiff–Appellee,

v.

Alfredo **IRIARTE–ORTEGA**, Defendant–Appellant.

No. 96–50151.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 6, 1997.

Decided May 9, 1997.

---

Rebecca P. Jones, Semel & Feldman, San Diego, California, for defendant-appellant Alfredo Iriarte–Ortega.

Bruce R. Castetter and Steve Miller, Assistant United States Attorneys, San Diego, California, for plaintiff-appellee United States of America.

Before BOOCHEVER, KOZINSKI and JOHN T. NOONAN, Jr., Circuit Judges.

## OPINION

KOZINSKI, Circuit Judge.

Alfredo Iriarte–Ortega appeals his conviction and sentence for conspiracy to import marijuana in violation of 21 U.S.C. §§ 952, 960, 963, and conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 846.

On August 17, 1995, Border Patrol Agent Martin Miles was flying over the Mexican border near Jacumba, California when he noticed two pickup trucks parked behind a house in Mexico. About an hour after the agent first noticed them, the trucks drove to the border, forded a ditch and continued north, driving in tandem. After the trucks made their way to a freeway, Miles radioed ground units to stop them.

One truck, driven by Iriarte, held 156 packages containing over a thousand pounds of marijuana. The other, driven by Mario Uriarte–Gonzales, contained 143 packages of marijuana, weighing 950 pounds. The marijuana in both trucks was similarly packaged in silver foil and plastic wrap. The two drivers were charged with conspiracy as well as the underlying offenses of possession and importation with intent to distribute. Uriarte pleaded guilty; Iriarte was convicted by

a jury of the conspiracy charges and sentenced to fifteen years.

## I

■ To establish a drug conspiracy, the government must prove: 1) an agreement to accomplish an illegal objective; and 2) the intent to commit the underlying offense. *United States v. Mesa–Farias*, 53 F.3d 258, 260 (9th Cir.1995).[1] Iriarte claims there was insufficient evidence to support his conspiracy conviction.[2] Specifically, he contends, the government failed to prove an agreement.

The agreement is the essence of the crime. It not only constitutes the actus reus, but is "all-important ..., for one must look to the nature of the agreement to decide ... whether the requisite mental state is also present." 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law*, § 6.4(d), at 70–71 (1986). However, "[b]ecause most conspiracies are clandestine in nature, the prosecution is seldom able to present direct evidence of the agreement." *Id.* at 71; *see also Blumenthal v. United States*, 332 U.S. 539, 557, 68 S.Ct. 248, 256, 92 L.Ed. 154 (1947) ("Secrecy and concealment are essential features of successful conspiracy."). Instead, most conspiracy convictions are based on circumstantial evidence, and we allow juries to draw inferences as to the existence of an agreement from the defendants' conduct. We have thus recognized that "[a] conspiracy may be proven by circumstantial evidence

that the defendants acted together with a common goal." *United States v. Disla*, 805 F.2d 1340, 1348 (9th Cir.1986); *see also United States v. Bibbero*, 749 F.2d 581, 587 (9th Cir.1984).

■ Coordination between conspirators is strong circumstantial proof of agreement; as the degree of coordination between conspirators rises, the likelihood that their actions were driven by an agreement increases. *See United States v. Hernandez*, 876 F.2d 774, 778 (9th Cir.1989); *see also Mesa–Farias*, 53 F.3d at 260 ("Agreement may be shown by evidence of coordinated activity between the defendant and the alleged coconspirators."); *United States v. Hegwood*, 977 F.2d 492, 497 (9th Cir.1992) ("The high degree of coordination between [defendants] is sufficient evidence from which a jury could find agreement."). Moreover, a jury may infer the existence of an agreement " 'if there be concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose.' " *United States v. Melchor–Lopez*, 627 F.2d 886, 890 (9th Cir.1980) (quoting *United States v. Monroe*, 552 F.2d 860, 862–63 (9th Cir.1977)).

In this case, a jury could reasonably have inferred a conspiratorial agreement from the defendants' long list of coordinated actions. Two pickup trucks of identical make and model—one gray with a white camper shell,

---

1. Both the government and Iriarte include a third element: an overt act in furtherance of the conspiracy. *See United States v. Penagos*, 823 F.2d 346, 348 (9th Cir.1987). It is clear, however, that there is no overt act requirement for a violation of 21 U.S.C. § 846 (conspiracy to possess with intent to distribute). *See United States v. Shabani*, 513 U.S. 10, 14–16, 115 S.Ct. 382, 385, 130 L.Ed.2d 225 (1994) ("In order to establish a violation of 21 U.S.C. § 846, the Government need not prove the commission of any overt acts in furtherance of the conspiracy."). In *Shabani*, the Court reasoned that since "the general conspiracy statute, 18 U.S.C. § 371, contains an explicit requirement that a conspirator 'do any act to effect the object of the conspiracy' ... Congress' silence in § 846 speaks volumes." *Id.* Since 21 U.S.C. § 963 (conspiracy to import) and § 846 have identical language and are part of the same law—the Comprehensive Drug Abuse Prevention and Control Act of 1970—it is likely that section 963 also requires no overt act. However, we need not reach this issue because Iriarte

clearly committed an overt act in furtherance of the conspiracy by driving a marijuana-laden truck across the border.

2. In reviewing for sufficiency of the evidence, we determine whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). Iriarte's acquittal on the importation and possession charges does not affect our review of his conspiracy conviction because "[w]e review the sufficiency of the evidence for a given count 'independent of the jury's determination that evidence on another count was insufficient.' " *United States v. Hart*, 963 F.2d 1278, 1282 (9th Cir.1992) (quoting *United States v. Powell*, 469 U.S. 57, 67, 105 S.Ct. 471, 477–78, 83 L.Ed.2d 461 (1984)).

one white with a gray shell—met behind a house south of the border. They drove from behind the house to a location near the border, where they stopped and waited together. Someone placed a ramp across a ditch positioned to prevent vehicles from crossing, and the trucks proceeded into the United States, the white truck preceding the gray truck by about a minute. The trucks took a dirt road to Highway 80 eastbound; proceeded north on Carrizo road; and turned onto Interstate 8 westbound. They contained roughly equal amounts of marijuana in packages as uniform as McDonald's french fries. The interchangeable camper shells were secured with matching hardware.

Iriarte seems to argue that it was all just a big coincidence, but the jury was entitled to conclude otherwise. Indeed, it's hard to see what other conclusion a rational jury might have reached. There was, therefore, more than sufficient evidence to support Iriarte's conspiracy conviction.[3]

## II

■ Iriarte claims the district court erred in allowing the government to bolster the credibility of two of its witnesses with inadmissible hearsay. The bolstering was a response to defense efforts to show that the agents had exaggerated the strength of the case at pre-trial proceedings and were, therefore, unreliable. We review decisions to admit evidence for abuse of discretion. *United*

States v. Collicott, 92 F.3d 973, 978 (9th Cir.1996).

The first witness was Agent Miles, who described his surveillance of the trucks. On cross-examination, defense counsel focused on an apparent discrepancy between Miles' pre-trial hearing testimony and his account at trial. On redirect, the court asked Miles: "Do you recall testifying to any different statement of facts than you testified here today?" Miles—over Iriarte's objection—answered, "No, your honor."

■ The second witness was DEA Agent Donald Martin, who testified about the price of marijuana and the m.o. of drug smuggling organizations.[4] On cross-examination, defense counsel attempted to show that Martin testified falsely to the grand jury. For instance, Martin told the grand jury that Miles kept the gray pickup in sight from the time it crossed the border to the time it was apprehended by the Border Patrol; at trial, however, Miles testified to losing sight of the trucks on two occasions. On redirect, the government had Martin read—over Iriarte's objection—the portion of his incident report summarizing what Miles had told him.

Iriarte argues that Miles' statement "No, your honor," in response to the question whether he had testified differently before, should have been excluded as hearsay;[5] likewise for Martin's reading of the incident report.[6] The government argues that the testimony was properly admitted under Rule

---

3. Iriarte also contends that the district court erred in basing his offense level on the total amount of marijuana found in both trucks. However, given the degree of coordination between the defendants, the district court didn't err in finding that Iriarte should have foreseen the amount contained in both trucks.

4. Iriarte contends that the district court erred by permitting the government to introduce evidence that coconspirator Uriarte had a cellular phone and that cellular phones are used by drug smuggling organizations. He argues that the evidence was both irrelevant and prejudicial. True, possession of a cell phone is consistent with any number of innocent activities, but the jury was entitled to know what tools defendants might have used in committing a crime. *See United States v. Crespo de Llano*, 838 F.2d 1006, 1018 (9th Cir.1988) (mobile phone is probative of a narcotics trafficking conspiracy). Furthermore,

although the phone was found on Uriarte, the close coordination between the coconspirators was sufficient to link Iriarte to this evidence. Thus, the district judge didn't abuse his discretion in admitting it.

5. The argument goes like this: Miles' statement implied that his prior out-of-court testimony corresponded with his in-court testimony. It was tantamount to stating, "I said the same thing at the pre-trial hearing." Thus it indirectly brought the prior statements into court.

6. Although the government may have intended to offer the evidence for a non-hearsay purpose—rehabilitation—there was no limiting instruction. Thus, the jury could have considered the prior consistent statements for their truth. But this was not likely to have been harmful. *See* note 9 *infra.*

801(d)(1)(B), which permits the introduction of prior consistent statements.[7]

We need not decide this question, however, because any error was harmless. Iriarte attempted to show that the two witnesses had shaded their pre-trial testimony, and thus were not to be believed.[8] But if the witnesses were impeached at all, it was only slightly. The effect of the rehabilitation evidence (Miles' statement and Martin's reading of the report) was negligible at best. The testimony put no new facts before the jury,[9] nor did it have a significant effect on the credibility of either witness. Whatever we may think of the government's bolstering, it could not possibly have changed the outcome of the trial.

**AFFIRMED.**

---

7. The rule makes a statement "not hearsay" if the "declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." Fed.R.Evid. 801(d)(1)(B). Iriarte argues that the prior consistent statements were inadmissible because the government didn't establish that they were made before the motive to fabricate arose—a requirement of Rule 801(d)(1)(B) under *Tome v. United States*, 513 U.S. 150, 156–58, 115 S.Ct. 696, 701, 130 L.Ed.2d 574 (1995).

8. In his brief, Iriarte suggests that a jury that disbelieved the cops might have rejected the government's case altogether. The jury might not have been sure it was Iriarte who drove the truck across the border; he could have replaced another driver while the truck was out of view. Or the jury might not have been sure Iriarte knew the truck was stuffed with marijuana.

9. By definition, "prior consistent statements" are cumulative of facts presented at trial.