UNITED STATES of America,
Plaintiff—Appellee,

v.

Wayne N. MORRIS, Defendant—
Appellant.

No. 00–30219.
D.C. No. CR–99–00174–JCC.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 5, 2002.

Decided July 31, 2002.

Before ALARCÓN and SILVERMAN, Circuit Judges, and BREWSTER,* Senior District Judge.

## MEMORANDUM**

Wayne N. Morris ("Morris" or "Wayne"[1]) appeals his jury trial conviction and 528-month sentence for five offenses: (1) conspiracy to commit bank robbery (18 U.S.C. § 2113) and to use and carry a firearm during and in relation to crimes of violence (18 U.S.C. § 924(c)), all in violation of 18 U.S.C. § 371; (2) aiding and abetting armed bank robbery (18 U.S.C. §§ 2 and 2113(a), (d)); (3) aiding and abetting the use of a firearm during a bank robbery (18 U.S.C. §§ 2 and 924(c)(1)(A)(ii)); (4) aiding and abetting assault on a federal officer by use of a handgun (18 U.S.C. §§ 2, 111, and 1114); and (5) aiding and abetting the use of a firearm during and in relation to an assault on a federal officer (18 U.S.C. §§ 2 and 924(c)(1)(A)(iii)).

Morris argues that four errors were committed by the court below. First, he asserts there was insufficient evidence presented at trial that he knew his co-defendant possessed and intended to use a firearm such that his conviction on all five counts must be reversed. Second, Morris claims his conviction on count 3, for aiding and abetting the use of a firearm during a bank robbery, must be vacated because the jury's verdict did not conform to the indictment. Third, Morris asserts the district court erred in denying his motion to dismiss count 5, the second charge for violation of section 924(c), as duplicative of count 3. Fourth, he contends the court

---

* The Honorable Rudi M. Brewster, Senior United States District Judge for the Southern District of California, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. We sometimes refer to the appellant as "Wayne" to distinguish him from his brother, Everett Morris. However, we use "Morris" only to refer to the appellant.

failed to make sufficient factual findings to support his two-level sentence enhancement for obstruction of justice. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I

On March 26, 1999, Wayne drove his brother, Everett Morris, to Key Bank in Shoreline, Washington, just outside of Seattle. While Wayne waited outside in a "little nook," Everett went running into the bank, gun held out. Pointing his gun at a teller, Everett put a blue gym bag on the teller's counter and demanded that the teller "[p]ut the money in the bag." He left the bank with over $30,000.

Everett ran across the street and got back in the car with Wayne. Everett shot at a police officer as they were sitting in traffic. With Wayne driving, the two led the police on an extended car chase. During the chase, Everett shot at FBI agent Roberta Burroughs. Just before the chase ended, Everett fired shots again at a police officer. Wayne finally stopped when he was shot and the car was disabled.

Federal agents investigating the Shoreline robbery contacted Oregon agents who informed them that the Shoreline robbery was similar to two bank robberies that had taken place in Oregon on October 26, 1998 and February 26, 1999. The October 26th robbery took place in Clackamas, Oregon, and appeared to have been committed by a lone adult male. The February 26th robbery took place in Gresham, Oregon, close to Portland ("February 26th robbery" or "Portland robbery"), and involved a getaway car similar to the one used in the Shoreline robbery. A number of factors led FBI agent Paul Robert Stone to link all three robberies as having been committed by the same person or persons, including the gun used, the getaway car, and the physical description of the robber.

On April 1, 1999, Federal agents executed search warrants on the car and on Wayne's and Everett's households. From Wayne's apartment, they recovered a leather jacket that appeared to be the one worn by the perpetrator of the Gresham robbery, and a cardboard currency separator used by bank tellers to separate denominations of currency.

On that same day, April 1, 1999, Wayne and Everett were jointly indicted by the grand jury for one count of armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d) and § 2; and for one count of brandishing a firearm during and in relation to the armed bank robbery, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Later, on September 15, 1999, the Morrises were indicted by a superseding indictment, which charged them with five counts: (1) conspiracy to commit bank robbery, in violation of 18 U.S.C. § 2113 (referencing the Gresham and Shoreline robberies); (2) armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d) and § 2; (3) discharge of a firearm during the bank robbery, in violation of 18 U.S.C. § 924(c) and § 2; (4) assault on a federal officer, in violation of 18 U.S.C. §§ 111 and 2; and (5) discharge of a firearm during the assault on a federal officer, in violation of 18 U.S.C. § 924(c) and § 2.

Everett and Wayne jointly moved to dismiss the second § 924(c) charge of the superseding indictment, arguing it duplicated the first § 924(c) charge. The district court denied their motion.

On October 27, 1999, Everett and Wayne were jointly charged by a second superseding indictment, which amended the superseding indictment by (a) adding to the conspiracy charge an allegation of conspiracy to use a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c); and (b) changing count 3 to al-

lege brandishing, rather than discharging, of a firearm during the bank robbery.

Wayne was tried first, in a five-day jury trial. At the close of trial, on December 10, 1999, the defense submitted proposed special interrogatories for the jury that asked two questions: whether a firearm was brandished in relation to the armed bank robbery, and whether a firearm was discharged in relation to the armed bank robbery. The interrogatories were incorporated into the verdict form, and the jury answered "yes" to both questions when it returned its verdict the same day. The district court sentenced Wayne to 10 years on count 3, the minimum mandatory sentence for "discharge" of a firearm under 18 U.S.C. § 924(c)(1)(A)(iii), and to a total of 528 months. Everett Morris subsequently pled guilty to counts 1 through 4 of the second superseding indictment, and was sentenced to 376 months.

## II

Morris first argues that his conviction on all five counts of the second superseding indictment should be overturned because there was insufficient evidence to support the jury's conviction. Specifically, he claims insufficient evidence was presented at trial that he knew his co-defendant, Everett, had a firearm and intended to use it. All five counts of his conviction contain the element of use of a firearm under either conspiracy or aiding and abetting theories. Thus, according to Morris, if the evidence does not show he

intended to aid his co-defendant's use of a firearm, then his conviction on all five counts must be overturned.

Ordinarily, we review claims of insufficient evidence to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). However, as Morris concedes, he did not move for acquittal below, and thus waived his right to appeal on grounds of insufficient evidence. Our review is therefore limited to the correction of plain error and prevention of manifest injustice. *United States v. Quintero–Barraza,* 78 F.3d 1344, 1351 (9th Cir.1995); *United States v. Vizcarra–Martinez,* 66 F.3d 1006, 1009–10 (9th Cir.1995).[2]

Here, sufficient evidence was presented that Morris knew his brother would use a firearm during the bank robbery and assaults and intended to aid his brother's use of the firearm to support the jury's conviction of him on all five counts. We discuss the evidence that was offered to support each count below, and conclude the government presented sufficient evidence at trial from which a rational jury could find the intent required for each crime.

First, with respect to count 1,[3] which charges conspiracy to commit bank robbery and to use a firearm during a crime of violence, in violation of 18 U.S.C. §§ 371, 2113, and 924(c), Morris essentially

**2.** There is some question in our case law about the propriety of distinguishing between these two standards of review, because a reviewing court should be "reluctant to sustain a conviction if it could be clearly seen from the record that the evidence was insufficient." *Vizcarra–Martinez,* 66 F.3d at 1010; *see United States v. Alvarez–Valenzuela,* 231 F.3d 1198, 1201 (9th Cir.2000). However, we need not address any such distinction in the

standards of review here because we conclude that the evidence below satisfies the standard of review for a claim of insufficient evidence.

**3.** Unless noted otherwise, the counts discussed in this section refer to the counts charged in the second superseding indictment.

contends there was a lack of evidence at trial that he knew Everett would use a firearm to commit the bank robberies to support the conspiracy conviction.[4] We disagree. The government presented evidence from which the jury could rationally find that Wayne knew Everett would be using a gun. Circumstantial evidence linked Wayne to the February 26th Oregon robbery, during which Everett used a gun.[5] Other circumstantial evidence suggested that Wayne knew his brother had used a gun to commit the February 26th robbery and would use one to commit the March 26th robbery. The government presented evidence from Agent Stone that the same unique gun was used in both robberies. The evidence also showed that after the March 26th robbery, during the hot pursuit,[6] at a time when Wayne testified he knew his brother possessed a firearm and intended to use it, Wayne drove the getaway car so as to evade the police.

Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have found that Morris knew his brother would be using a firearm during the bank robberies. Morris contends that the only way the government could have adequately proven knowledge was through Everett's testimony. This contention is simply incorrect. We have recognized before the rarity of proving a defendant's criminal intent by direct evidence. *See United States v. Ortega*, 203 F.3d 675, 683 (9th Cir.2000) ("Proof of a formal agreement is very uncommon given that most conspiracies are clandestine in

nature.") (internal quotes omitted). Instead, the circumstantial evidence presented by the government below is typical of the proof usually offered to establish a conspiracy. *See United States v. Iriarte–Ortega*, 113 F.3d 1022, 1024 (9th Cir.1997) ("most conspiracy convictions are based on circumstantial evidence, and we allow juries to draw inferences as to the existence of an agreement from the defendant's conduct"). Morris's conviction on count 1 therefore did not amount to plain error nor was it manifestly unjust.

Second, Morris contends the evidence was insufficient to support his conviction as to count two, which charges him with aiding and abetting armed bank robbery in violation of 18 U.S.C. §§ 2, 2113(a), and 2113(d), because the government failed to show he intended to facilitate Everett's use of a firearm during the robbery. Thus, it is the "armed" element of 18 U.S.C. § 2113(d) that Morris argues is not supported by sufficient evidence, not the elements of unarmed bank robbery found in 18 U.S.C. § 2113(a). To support a conviction for aiding and abetting armed bank robbery, the evidence must show the defendant " 'aided and abetted the principal both in the act of bank robbery and in the principal's use of "a dangerous weapon or device" during the act.' " *Dinkane*, 17 F.3d at 1197, *quoting United States v. Jones*, 678 F.2d 102, 105 (9th Cir.1982). The temporal scope of an armed bank robbery encompasses the period of hot pursuit. *Id.* at 1199.

---

**4.** The conspiracy charge encompassed both the Portland and Seattle bank robberies.

**5.** A getaway car similar in description to the one Morris drove in the March 26th robbery was used by the February 26th Gresham robbers; clothing resembling that used by the February 26th robber was found at Wayne Morris's apartment; a currency separator from the Gresham bank was found afterward

at Wayne Morris's household; Wayne and Everett Morris saw each other regularly—3 or 4 times a week—around the time of the February 26th and March 26th robberies.

**6.** The scope of an armed bank robbery encompasses the period of hot pursuit. *United States v. Dinkane*, 17 F.3d 1192, 1199 (9th Cir.1994).

■ Sufficient evidence was presented below to support Morris's conviction for aiding and abetting armed bank robbery. Police officers and other witnesses testified that on several occasions, Everett Morris fired shots at officers from the getaway car. Wayne Morris drove the getaway car in such a way as to evade the police, a fact from which the jury rationally could infer he intended to aid his brother's use of the gun. And the shots were fired during the hot pursuit that followed the robbery, placing them within the scope of the robbery.

Based on this evidence, a rational jury could have found that Wayne aided and abetted Everett's use of a firearm during the robbery. While Wayne testified that he drove evasively because he was being held at gunpoint and threatened by Everett, his testimony was contradicted by that of other witnesses. It is the province of the jury to make credibility determinations. *United States v. Scheffer*, 523 U.S. 303, 313, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to sustain the jury's verdict on count two.

Third, Morris argues there was insufficient evidence to support the jury's conviction of him as to count three, which charges Morris with aiding and abetting brandishing of a firearm during the bank robbery, again on grounds there was insufficient evidence from which the jury could find that he intended to aid Everett's use of a firearm. Based on the evidence discussed above in conjunction with count two, a rational jury could conclude that Morris intended to aid and abet his brother's brandishing or discharge of a firearm during the flight from the bank robbery. Therefore, there was sufficient evidence to support Morris's conviction on count three.

■ Fourth, Morris contends there was insufficient evidence to support his conviction on count four, which charges him with aiding and abetting assault on a federal officer by use of a handgun in violation of 18 U.S.C. §§ 2, 111 and 1114. However, sufficient evidence was presented at trial to support this charge. The assault on Agent Burroughs took place after Everett had fired shots at Officer Gibson and before he shot at Officer Young. During the pursuit, Wayne drove the car so as to help Everett evade the police. A rational jury could infer from this evidence that Wayne intended to help Everett in his assault on a federal officer. Therefore, sufficient evidence was presented that Wayne aided and abetted Everett's assault on a federal officer.

Fifth, Morris challenges his conviction on count five, which charges him with aiding and abetting the discharge of a firearm in relation to the assault on a federal officer. Based on the evidence discussed above in conjunction with count four, there was sufficient evidence to support Morris's conviction for aiding and abetting discharge of a firearm under § 924(c).

In sum, we find sufficient evidence was offered at trial to support the jury's verdict that Morris was guilty of all charges. Morris's conviction on the evidence presented below was neither clearly erroneous nor manifestly unjust.

### III

Morris next contends that his conviction on count 3 must be vacated because the jury's verdict finding him guilty of "discharging" a firearm under 18 U.S.C. § 924(c)(1)(A)(iii) does not conform to the second superseding indictment, which charges him with "brandishing" a firearm in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Morris asserts this variance in proof abrogated his Fifth Amendment right to be

tried on the crime for which he was indicted.

Morris failed to raise this argument below. We therefore review for plain error. Fed.R.Crim.P. 52(b); *Johnson v. United States*, 520 U.S. 461, 466, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). "Under the plain error standard, [the appellant] must establish an error, that was plain, and that affected his substantial rights." *United States v. Buckland*, 289 F.3d 558, 563 (9th Cir.2002) (en banc).[7]

Morris asserts that the district court's sentence in variance with the indictment affected his substantial rights because it denied him his Fifth Amendment right to a trial on the crime as indicted. To pass constitutional muster, "[a]n indictment must set forth each element of the crime that it charges ... [b]ut it need not set forth factors relevant only to the sentencing of an offender found guilty of the charged crime." *Almendarez-Torres v. United States*, 523 U.S. 224, 228, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) (citation omitted). Here, Morris argues the variance affected his substantial rights because it denied him his Fifth Amendment right to be indicted by the grand jury for the crime for which he was tried.

■ Here, however, the variance between the indictment and proof at trial did not abrogate Morris's Fifth Amendment rights, because the variance did not affect a crime element of § 924(c). Instead,

"brandishing and discharging [are] sentencing factors to be found by the judge, not offense elements to be found by the jury." *Harris v. United States*, —— U.S. ——, 122 S.Ct. 2406, 2414, 153 L.Ed.2d 524 (2002).[8] These factors therefore "need not be alleged in the indictment. . . ." *Id.* at 2420.[9] The second superseding indictment's allegation of "brandishment" was mere surplusage.

Because the discharge of a firearm is a sentencing factor, not a crime element, its omission from the second superseding indictment did not abrogate Morris's Fifth Amendment rights. The variance between the indictment and proof at trial was not plainly erroneous.

## IV

Morris contends that the district court erred in denying his motion to dismiss count 5 of the second superseding indictment as duplicative of count 3. Morris argued below that count 5, which charged violation of 18 U.S.C. § 924(c) based on the predicate crime of assault on a federal officer, duplicated count 3, for violation of § 924(c) based on the predicate crime of armed bank robbery, because they were based on the same course of conduct–the bank robbery and the flight from it. The district court denied Morris's motion, holding that multiple crimes occurring as part of the same underlying occurrence may

---

**7.** The parties argue over whether Morris invited the purported error. Invited error is unreviewable only if there "is evidence in the record 'that the defendant was aware of, i.e. knew of, the relinquished or abandoned right'..." and the error affects a substantial right. *United States v. Perez*, 116 F.3d 840, 845, 846 (9th Cir.1997). Both the plain error and invited error standards thus turn on whether Morris had a substantial right to be indicted for discharge of a firearm. Because we conclude that Morris had no such substan-

tial right, we need not, and do not, address the invited error issue.

**8.** We recognize that *Harris* achieved a majority of the Court's vote only as to Parts I, II, and IV of the opinion. The holding on which we rely here is contained in Part II, and is therefore the holding of the Court.

**9.** This statement is from Part IV of the *Harris* opinion. *See* discussion *supra* note 8.

constitute separate predicate offenses if charged as separate crimes.

We review de novo a district court's decision whether to dismiss an indictment based on its interpretation of a federal statute. *See United States v. Akins,* 276 F.3d 1141, 1146 (9th Cir.2002) (18 U.S.C. § 922(g)(9)).

Morris contends that both § 924(c) counts, while technically predicated on different crimes, in reality were based on the same course of criminal conduct (again, the bank robbery and flight from it) and therefore were duplicative. He argues that because the separate predicate crimes were so closely linked in time, they should be considered a single predicate for purposes of supporting a § 924(c) charge. He also urges that the rule of lenity supports vacating the second § 924(c) charge.

█ Morris's arguments lack merit. His two § 924(c) charges are not duplicative under the case law of this circuit. "[C]rimes occurring as part of the same underlying occurrence may constitute separate predicate offenses [to support separate 924(c) charges] if properly charged as separate crimes." *United States v. Andrews,* 75 F.3d 552, 558 (9th Cir.1996). The question is not, as Morris puts it, whether the second charge should be treated as part of the same criminal offense, but rather whether the second charge actually was based on the same offense or on a separate, properly charged crime. *Id.* Here, the two § 924(c) charges were predicated on separate, properly charged crimes–bank robbery and assault on a federal officer.

Moreover, Morris's argument that the contemporaneity of the predicate acts on which two § 924(c) are based renders the § 924(c) charges duplicative is one we have considered and rejected before. *See Andrews,* 75 F.3d at 557–58, *citing United States v. Fontanilla,* 849 F.2d 1257 (9th

Cir.1988). Instead, this circuit has affirmed convictions on multiple Section 924(c) counts based on acts that occurred almost contemporaneously. *See id.* at 554–55 (predicate acts occurred "at virtually the same time").

We also reject Morris's contention that the rule of lenity weights in favor of vacating his second § 924(c) charge. While we recognize the harshness of Morris's mandatory 25–year sentence for the second § 924(c) conviction, lenity considerations apply only where a statute is grievously ambiguous or uncertain. *Muscarello v. United States,* 524 U.S. 125, 138–39, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998). We find no such grievous ambiguity with respect to whether multiple § 924(c) counts can be supported by properly charged separate crimes although those crimes are part of a single course of conduct.

The district court did not err in denying Morris's motion to dismiss the second § 924(c) count as duplicative.

## V

Finally, Morris argues that the district court's findings were insufficient to support of a two-level sentence enhancement for obstruction of justice under U.S.S.G. § 3C1.1. During sentencing, the Government stated "we're asking that the Court make the finding that Mr. Morris testified falsely, perhaps both at trial and here, that he testified to material facts and he did so willfully. That then triggers the two-level obstruction." The district court responded, "[t]he Court makes those findings." Morris argues this exchange did not represent adequate factual findings by the court for the two-level enhancement.

Factual findings by the district court to support sentence enhancement are reviewed for clear error. *United States v. Garcia–Guizar,* 160 F.3d 511, 524 (9th Cir.

1998), *citing United States v. Sherwood,* 98 F.3d 402, 415 (9th Cir.1996). The district court's application of the sentencing guidelines to the facts of a particular case is reviewed for abuse of discretion. *Id., citing United States v. Parrilla,* 114 F.3d 124, 126 (9th Cir.1997).

When a defendant objects to enhancement of his sentence for obstruction of justice pursuant to section 3C1.1, a district court must "review the evidence and make independent findings necessary to establish a willful impediment to, or obstruction of, justice, or an attempt to do the same." *United States v. Dunnigan,* 507 U.S. 87, 95, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). Findings that encompass "all of the factual predicates for a finding of perjury" suffice. *Garcia–Guizar,* 160 F.3d at 524. The district court need not make such findings, however, where the defendant fails to object to the enhancement. *See United States v. Rojas–Millan,* 234 F.3d 464, 471 (9th Cir.2000).

■ Here, Morris failed to object below to the sentence enhancement for obstruction of justice. Under this circuit's interpretation of *Dunnigan,* the district court's need to make independent factual findings to support the two-level increase was not triggered. *See Rojas–Millan,* 234 F.3d at 471.

■ Moreover, there is adequate support in the record for the obstruction of justice enhancement. *Dunnigan* does not require remand to the district court for findings where the record allows us to make a determination regarding the correctness of the district court's application of the sentencing guidelines. *United States v. Arias–Villanueva,* 998 F.2d 1491, 1513 (9th Cir.1993). Morris testified on his own behalf at trial; his testimony included, in part, denial that he knew anything about his brother's intent to rob the Seattle bank, and a claim that his brother held him at gunpoint during the entire hot pursuit. His testimony about being unaware about his brother's intent to rob the Seattle bank was contradicted by circumstantial evidence that linked him to the Oregon robbery, and by other evidence about the Seattle robbery. For example, Morris drove a car that had false license plates clipped on over the car's permanent plates. He also waited for his brother, not in the bank's parking lot as one would expect from an innocent driver, but rather in a "little nook" near the bank. These facts suggest that Morris did know his brother intended to rob the Seattle bank. And Morris's claim that he drove the getaway car under duress was contradicted at trial by the testimony of Officer Gibson, who stated she saw the getaway car's occupants "sitting there at the light acting calm" in an apparent attempt by both to evade the police's detection. The evidence presented by the government thus contradicted Morris's testimony that he was a mere innocent participant in the bank robbery and flight from it.

The trial court adopted the government's statement that Morris "testified falsely, perhaps both at trial and here, as to material facts and did so willfully." The record supports the enhancement for obstruction of justice. The district court thus properly enhanced Morris's sentence.

## VI

Morris's jury conviction and the district court's judgments are AFFIRMED.