**UNITED STATES of America, Plaintiff–Appellee,**

v.

**John Derrick MARTIN, Defendant–Appellant.**

---

**United States of America, Plaintiff–Appellee,**

v.

**Steve Cordell Dobson, Defendant–Appellant.**

Nos. 03–10581, 03–10665.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 2, 2004.

Decided Nov. 23, 2004.

---

David A. Pimsner, USPX-Office of the U.S. Attorney, Phoenix, AZ, for Plaintiff–Appellee.

Cynthia M. Fort, Law Office of Cynthia M. Fort, Nashville, TN, for Defendant–Appellant.

Before: B. FLETCHER, THOMAS, and BEA, Circuit Judges.

## MEMORANDUM [*]

John Martin and Steve Dobson appeal from the district court's denial of motions for judgment of acquittal brought under Fed.R.Crim.P. 29. After a nine-day trial, a jury convicted each of them of one count of conspiracy to possess five or more kilograms of cocaine with intent to distribute and one count of attempted possession of five or more kilograms of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846. Martin and Dobson each contend that there was insufficient evidence to convict them of either count. Dobson also claims a variety of trial de-

fects require reversal, including ineffective assistance of counsel, prosecutorial misconduct, and denial of a motion in limine seeking a jury instruction on mandatory sentencing minimums. We affirm.

## I.

Claims of insufficient evidence for conviction are reviewed de novo. *United States v. Shipsey,* 363 F.3d 962, 971 n. 8 (9th Cir.2004). There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Shipsey,* 363 F.3d at 971 n. 8.

## II.

To prove a conspiracy to possess a controlled substance with intent to distribute, the Government must offer evidence establishing beyond a reasonable doubt: "1) an agreement to accomplish an illegal objective; and 2) the intent to commit the underlying offense." *United States v. Iriarte–Ortega,* 113 F.3d 1022, 1024 (9th Cir. 1997). The government need not provide direct evidence of an explicit agreement, but can instead show through circumstantial evidence that an agreement existed. *Id.* at 1024; *United States v. Restrepo,* 930 F.2d 705, 709 (9th Cir.1991). "Coordination between conspirators is strong circumstantial proof of agreement; as the degree of coordination between conspirators rises, the likelihood that their actions were driven by an agreement increases." *Iriarte–Ortega,* 113 F.3d at 1024. Once a conspiracy is proved, "evidence of only a slight connection to the conspiracy is nec-

[*] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

essary to support a conviction of knowing participation in that conspiracy." *United States v. Sarkisian,* 197 F.3d 966, 985 (9th Cir.1999).

In this case the government introduced substantial evidence in the form of witness testimony, surveillance video, and phone records, from which the jury reasonably could find both conspiracy and attempted possession of cocaine. The degree of coordination between Martin and Dobson was high, as was the degree of coordination with co-defendant Buelna. The evidence established that Dobson made several contacts with the undercover agent while intermittently meeting with Martin. In the meantime, Martin made "heat runs" during some of these contacts to make sure that no police were in the area. While at first Dobson told the undercover agent that he didn't have the money and that "Rabbit" did, Dobson eventually obtained over $9,000 from Martin that he delivered to the undercover agent in exchange for the duffel bag containing 20 kilograms of what he believed to be cocaine. Cell phone records corresponded with several calls made among the co-conspirators during the transaction.

As to Martin's identity and involvement, during several phone conversations co-defendant Buelna called his customer "Rabbit," a known nickname of Martin's. Buelna arranged for "Rabbit" to meet the undercover officer for delivery of the duffel bag, and it was "Rabbit" who provided the description of the person who would pick up the bag. The Suburban driven by "Rabbit" the day of the transaction was registered to John Martin. Three different officers identified Martin both before and during trial as the man who was driving the Suburban. One of the cell phones used during the transaction was unlocked using the last four digits of Martin's social security number. After seizure of the bag, Buelna and Martin spoke on the phone, at which time Buelna learned that Dobson was Martin's uncle.

As for his part, Dobson made several visits to the undercover agent in the Shoney's each time trying to get the agent to leave the restaurant to go meet "Rabbit" who had the money. Dobson mentioned more than once that the Shoney's was not good because there were too many police in the area. More than once he handed the agent a cell phone with Buelna or Verdugo, an informant who set up Buelna, on the line. It was Dobson who actually proposed the "compromise" location for the exchange—the Shoney's parking lot. When the transaction finally occurred, Dobson was the one who handed over the money and took the duffel bag. He was nervous and visibly shaking at the time. Although he did not say the word "cocaine," he did refer to "the shit," a common slang term for illegal drugs. During the traffic stop made shortly after the exchange, Dobson denied ownership or knowledge of the bag, though he had just exchanged a large amount of cash for the bag. Finally, when he was arrested several weeks later, he again denied that the "stuff" was his, but asked what had actually happened to it. When asked who paid him, he responded "You're trying to get me killed." This, combined with testimony that he referred to "the stuff" and "the shit," are sufficient to support an inference that he knew that possession of an illegal drug was the object.

Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt the essential elements of the charged conspiracy involving Martin and Dobson. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

### III.

To prove "attempt" to possess cocaine with intent to distribute, the government must show that the defendants intended to commit the underlying act, here possession of cocaine, and took a "substantial step toward commission of the crime that strongly corroborates that intent." *United States v. Taylor,* 716 F.2d 701, 711 (9th Cir.1983). The evidence was clearly sufficient to support a jury's finding that Martin and Dobson attempted to possess cocaine with intent to distribute.

### IV.

Dobson's remaining claims lack merit. After a thorough review of the record, we find that none of his arguments regarding ineffective assistance of counsel, prosecutorial misconduct, and his motion in limine require reversal.

### V.

Defendant Martin has moved the court for leave to submit supplemental briefing on issues related to his sentencing that may be affected by *Blakely v. Washington,* — U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) and *United States v. Ameline,* 376 F.3d 967 (9th Cir.2004). We denied that request without prejudice pending the decisions in *United States v. Booker,* 375 F.3d 508 (7th Cir.2004), *cert. granted,* —— U.S. ——, 125 S.Ct. 11, 159 L.Ed.2d 838 (U.S. Aug. 2, 2004) (No. 04–104) and *United States v. Fanfan,* No. 03–47, 2004 WL 1723114 (D.Me. June 28, 2004), *cert. granted,* — U.S. ——, 125 S.Ct. 12, 159 L.Ed.2d 838 (U.S. Aug. 2, 2004) (No. 04–105). Accordingly, the mandate shall be withheld pending the outcome of those cases and during the pendency of any further related motions in the present case.

AFFIRMED. MANDATE WITHHELD.