**UNITED STATES of America, Plaintiff—Appellee,**

v.

**Amber Nicole ROSS, Defendant— Appellant.**

United States of America,
Plaintiff—Appellee,

v.

Anthony J. Sutton, Defendant—
Appellant.

Nos. 02–50650, 03–50296.
D.C. Nos. CR–02–00106–FMC–
04, CR–02–00106–WJR–01.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 2, 2005.

Decided Sept. 20, 2005.

Nancy B. Spiegel, Ronald L. Cheng, Andrea L. Russi, Stefanie Isser Goldblatt, Daniel D. Rubinstein, USLA—Office of the U.S. Attorney, Criminal Division, Los Angeles, CA, for Plaintiff—Appellee.

Caree Annette Harper, Law Office of Caree Annette Harper, Pasadena, CA, and Benjamin L. Coleman, San Diego, CA, for Defendant—Appellant, Amber Nicole Ross.

Robert M. Kitson, Santa Monica, CA, for Defendant—Appellant, Anthony J. Sutton.

Before O'SCANNLAIN and WARDLAW, Circuit Judges, and LOVELL,* District Judge.

## AMENDED MEMORANDUM**

Amber Nicole Ross and Anthony J. Sutton appeal their convictions and sentences following a jury trial for conspiracy, armed bank robbery, and use of a firearm during a crime of violence. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We affirm the convictions and Sutton's sentence, but grant a "limited remand" with respect to Ross's sentence pursuant to *United States v. Ameline*, 409 F.3d 1073, 1074 (9th Cir. 2005) (en banc), and *United States v. Moreno–Hernandez*, — F.3d ——, ——, 2005 WL 1560269, *9 (9th Cir.2005).

1. The district court did not abuse its discretion by admitting testimony re-

---

* The Honorable Charles C. Lovell, Senior United States District Judge for the District of Montana, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

garding Ross's decision to invoke her rights to counsel and to remain silent. Although the "silence" testimony was otherwise inadmissible, it was not error under Federal Rules of Evidence 401 and 402 to admit the testimony because Ross's counsel "opened the door" while cross-examining FBI Special Agent Auther by eliciting testimony that created the false impression that the FBI for some nefarious reason refused to give Ross a polygraph test. Nor was the evidence unduly prejudicial; it was limited to an explanation as to why the FBI did not give Ross a polygraph test. *See, e.g., McMillan v. Gomez*, 19 F.3d 465, 469–70 (9th Cir.1994) (defense counsel's introduction of evidence creating the impression that defendant was cooperative with the police "opened the door" for the prosecution to refute this impression by asking about defendant's later non-cooperation).

■ In addition, admission of the "silence" evidence did not violate Ross's Fifth Amendment rights because the evidence was a "fair response" to defense counsel's questions. The prosecutor did not treat Ross's silence as evidence of substantive guilt, but instead elicited testimony regarding Ross's decision to invoke her rights to counsel and to remain silent to explain why the FBI did not give her a polygraph test. *See United States v. Robinson*, 485 U.S. 25, 32, 108 S.Ct. 864, 99 L.Ed.2d 23 (1987) ("Where the prosecutor on his own initiative asks the jury to draw an adverse inference from a defendant's silence, . . . the privilege against compulsory self-incrimination is violated. But where as in this case the prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by defendant or his counsel, we think there is no violation of the privilege."); *United States v. Scholl*, 166 F.3d 964, 976 (9th Cir.1999) (questions regarding why

the defendant did not provide information to the government were not misconduct running afoul of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), because the defendant claimed that he was never given the opportunity to present documents or cooperate as he had requested).

■ 2. Ross and Sutton also argue that the cumulative effect of repeated instances of prosecutorial misconduct and erroneous evidentiary rulings deprived them of a fair trial. The prosecutor engaged in misconduct by asking Ross to comment on the veracity of other witnesses. *See United States v. Sanchez*, 176 F.3d 1214, 1219 (9th Cir.1999) (it is improper for a prosecutor to force a defendant on cross-examination to opine about the credibility of another witness). The prosecutor also committed misconduct by repeatedly asking defense witness Lafonte Tagger whether he realized he was testifying under oath, thereby conveying his personal disbelief of Tagger's testimony. *See Sassounian v. Roe*, 230 F.3d 1097, 1106 (9th Cir.2000) (prosecutor committed misconduct by accusing a defense witness of being a liar); *United States v. McKoy*, 771 F.2d 1207, 1210–11 (9th Cir.1985) ("The rule that a prosecutor may not express . . . his belief in the credibility of witnesses is firmly established."). The prosecutor improperly asked Tagger about his testimony being under oath at least 14 times—questioning that the prosecutor should have known crossed the line of proper advocacy.

■ With respect to Ross's and Sutton's evidentiary claims, the district court abused its discretion by allowing the government to cross-examine Tagger on the topic of gang membership. Tagger repeatedly denied that he and Sutton were affiliated with the Grape Street Crypts, and, unlike in *United States v. Abel*, 469 U.S. 45, 105 S.Ct. 465, 83 L.Ed.2d 450

(1984), the government failed to present extrinsic evidence, as it had promised to do, showing that Sutton was a member of the same gang as Tagger. Absent this foundation, the government's questions about gang membership were not probative of bias on the part of Tagger due to common membership in a gang. *See United States v. Takahashi*, 205 F.3d 1161, 1165 (9th Cir.2000) (for gang affiliation evidence to be admissible to establish bias, the proponent of the evidence must establish a foundation that the defendant and witness are members of the same gang). In addition, the district court abused its discretion by admitting evidence that Ross was fired by Diebold Incorporated after the robbery, that the FBI ordinarily does not allow armed robbery suspects to self-surrender, and that Ross was indicted by a grand jury. *See* Fed.R.Evid. 402 (irrelevant evidence is inadmissible).[1]

■ We conclude, however, that in light of the overwhelming evidence of appellants' guilt, each of these prosecutorial misconduct and evidentiary errors individually is harmless, *see United States v. Daychild*, 357 F.3d 1082, 1099 (9th Cir. 2004); *United States v. Arambula–Ruiz*, 987 F.2d 599, 605 (9th Cir.1993), and their cumulative effect did not deprive Ross or Sutton of a fair trial. *See United States v. Payne*, 944 F.2d 1458, 1477 (9th Cir.1991).

■ 3. Sufficient evidence existed from which a rational trier of fact could have convicted Ross of conspiracy, armed bank robbery, and use of a firearm during a crime of violence. There was sufficient evidence from which the jury could infer that Ross agreed with Sutton and others to rob the bank. *See United States v. Iriarte–Ortega*, 113 F.3d 1022, 1024 (9th

Cir.1997) ("[M]ost conspiracy convictions are based on circumstantial evidence, and we allow juries to draw inferences as to the existence of an agreement from the defendants' conduct."). The convictions for armed bank robbery and using a firearm during a crime of violence were proper under *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), because Ross's co-conspirators used a firearm in furtherance of the conspiracy, *id.* at 647, and it was reasonably foreseeable that the firearm would be used. *See United States v. Johnson*, 886 F.2d 1120, 1123–24 (9th Cir.1989). The government presented evidence that Ross always worked with a partner when servicing ATMs, who would have to be coerced into complying with the robbers' demands. Evidence also showed that Ross and Sutton were dating. *See United States v. Douglass*, 780 F.2d 1472, 1476 (9th Cir. 1986) (the jury could reasonably infer from the fact that the defendants knew one another well that each conspirator knew the others' methods of operation). Ross's phone records indicated that she communicated with Sutton several times on the night of the robbery. Finally, an eyewitness to the robbery testified that Ross and the masked robbers acted in concert during the robbery. *See Iriarte–Ortega*, 113 F.3d at 1024 ("Coordination between conspirators is strong circumstantial proof of agreement; as the degree of coordination between conspirators rises, the likelihood that their actions were driven by agreement increases."). Therefore, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the charged crimes beyond a reasonable doubt. *See United States v. Carranza*, 289 F.3d 634, 641–42 (9th Cir.2002).

---

**1.** We have reviewed and reject Ross's and Sutton's other claims of prosecutorial misconduct and erroneous evidentiary rulings.

4. Because Ross was convicted under a *Pinkerton* theory of liability of using a firearm during a crime of violence, rather than merely conspiring to do so, the district court did not err in sentencing her under 18 U.S.C. § 924(c), as opposed to 18 U.S.C. § 924(*o*). Nor did it err in applying § 924(c)(1)(A)(ii) rather than § 924(c)(1)(A)(i). *See United States v. Lavender,* 224 F.3d 939, 941–42 (9th Cir. 2000) (district court did not err in adjusting defendant's sentence based on coconspirator's use of a weapon during commission of the offense); *United States v. Garcia,* 909 F.2d 1346, 1349 (9th Cir.1990) (same).

■ 5. The argument that Sutton was improperly sentenced because the district court relied on prior convictions not proved to a jury beyond a reasonable doubt to find him a career offender and subject to a mandatory life sentence is foreclosed by *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 756, 160 L.Ed.2d 621 (2005). Nor is Sutton entitled to a "limited remand" pursuant to *Ameline,* 409 F.3d at 1074, because it is clear from the record that the sentencing error in his case did not affect his substantial rights, and thus he cannot meet the third prong of the plain error test. Sutton's sentence on all three counts was pursuant to statutory interpretation, not reliance upon the then-mandatory Sentencing Guidelines. The sentences as to Counts 1 and 2 were mandatory life imprisonment pursuant to 18 U.S.C. § 3559(c)(1)(A)(i), and the sentence as to Count 3 was a mandatory consecutive 84 months' imprisonment pursuant to 18 U.S.C. § 924(c)(1)(A)(ii). The record shows that the district court could not have imposed any legal sentences but the statutory mandatory sentences, nor could it do so upon remand.

6. As to Ross's unpreserved claims of sentencing error under *Booker,* because the original sentencing judge, Judge Rea, is deceased, the original sentence is vacated and the case remanded for resentencing. *United States v. Sanders,* 421 F.3d 1044, 1051–52 (9th Cir.2005).

**AFFIRMED IN PART AND REMANDED IN PART.**

### ORDER

The Memorandum disposition filed August 22, 2005, and appearing at 2005 WL 2001901 (9th Cir.2005), is hereby AMENDED. The clerk shall file the attached amended Memorandum disposition.

With this amendment, the panel has voted to deny the petitions for panel rehearing. The petitions for panel rehearing are DENIED. Further petitions shall not be entertained.