**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Yoshio TAKAHASHI, Defendant–
Appellant.**

**No. 98–10219.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 11, 2000.

Decided March 6, 2000.

Stephen J. Nutting, White, Pierce, Mailman & Nutting, Saipan, MP, for the defendant-appellant.

Kevin A. Seely, Assistant United States Attorney, Saipan, MP, for the plaintiff-appellee.

Before: VAN GRAAFEILAND,[1] ALARCON, and SILVERMAN, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Yoshio Takahashi ("Takahashi") appeals his conviction of (1) conspiring to possess methamphetamine with intent to distribute and to distribute in violation of 21 U.S.C. §§ 841(a), 846 and of (2) possessing methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a) and 18

U.S.C. § 2. A jury convicted Takashi on both counts on January 16, 1998. The district court sentenced Takahashi on April 21, 1998. Takahashi filed a timely Notice of Appeal on April 30, 1998. Takahashi challenges the admission of gang affiliation evidence and two instances of the district court's application of the Sentencing Guidelines. We affirm as to the admission of the gang affiliation evidence and as to the district court's application of U.S.S.G. § 3C1.1's two-level enhancement for obstructing justice. We reverse to the extent that the district court relied on U.S.S.G. § 2D1.2 in calculating Takahashi's base offense level. Accordingly, Takahashi's sentence is vacated and the case is remanded for resentencing.

Affirmed in part; reversed in part.

I.

On August 2, 1997, the DEA/CNMI Task Force executed a lawful search of Room 218 at the Sun Palace Hotel on Saipan in the Northern Mariana Islands. Room 218 is less than 300 feet from a high school. Takahashi and Hideaki Satake ("Satake") were present in Room 218 at the time of the search. When asked, Takahashi indicated that his identification was in a nearby bag, which he pointed out. A task force agent opened the identified bag and discovered, on top and in plain view, a crystalline substance that eventually proved to be methamphetamine hydrochloride.

Thereafter, the United States Government charged Takahashi (1) with conspiracy to possess with intent to distribute and to distribute a Schedule II controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 846 and (2) with possession with intent to distribute a Schedule II controlled substance in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Prior to trial, Takahashi moved in limine to suppress the evidence of his affiliation

1. The Honorable Ellsworth A. Van Graafeiland, Senior United States Circuit Judge for the Second Circuit Court of Appeals, sitting by designation.

with the Yakuza, a secretive Japanese organized crime group. Takahashi planned to call Satake as a defense witness. Satake would testify that he placed the drugs in Takahashi's bag without Takahashi's knowledge. Thus, Takahashi would argue that he did not "knowingly" possess within the meaning of the drug offenses charged. The Government, in order to counter Satake's testimony, planned to attack Satake's credibility by introducing evidence that Takahashi and Satake were both members of the Yakuza and that Yakuza members will perjure themselves for one another. The district court (Munson, C.J.) held a hearing on this issue on January 9, 1998. Chief Judge Munson decided to admit the Yakuza affiliation evidence, finding that it was both relevant and not unfairly prejudicial.

Trial then proceeded. On January 16, 1998, the jury convicted Takahashi on all counts. The district court set the sentencing hearing for late April 1998. On March 26, 1998, Takahashi escaped from the Department of Corrections. The initial break-out went unnoticed. However, a short time later, authorities discovered Takahashi trying to break back in to the correctional facility. Takahashi stipulated that his escape had lasted one and a half hours. The Presentence Investigation Report revealed his escape to Chief Judge Munson at the sentencing hearing on April 21, 1998.

At that hearing, the district court adopted the recommendation of the presentence report. Chief Judge Munson calculated Takahashi's base offense level pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2D1.2 because Takahashi committed a drug offense near a protected location, a school. Chief Judge Munson also applied a two-level enhancement pursuant to U.S.S.G. § 3C1.1 because Takahashi's escape obstructed the administration of justice.

Takahashi brings this appeal. He challenges the district court's admission of the Yakuza gang affiliation evidence and the district court's application of the Sentenc-

ing Guidelines. For the reasons that follow, we affirm in part and reverse in part.

## II. *The Yakuza gang affiliation evidence*

Takahashi's argument on appeal does not challenge the relevance of the gang affiliation evidence. Rather, Takahashi argues that the prejudicial effect of the Yakuza evidence outweighs any probative value.

We review evidentiary rulings for an abuse of discretion. *United States v. Manning,* 56 F.3d 1188, 1196 (9th Cir. 1995) (*citing United States v. Brooke,* 4 F.3d 1480, 1487 (9th Cir.1993)).

■ Evidence of gang affiliation is admissible when it is relevant to a material issue in the case. *United States v. Abel,* 469 U.S. 45, 49, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984) (finding gang affiliation evidence admissible on issue of bias); *United States v. Hankey,* 203 F.3d 1160, 1171–73 (9th Cir.2000) (finding gang affiliation evidence admissible to establish bias and coercion); *United States v. Easter,* 66 F.3d 1018, 1021 (9th Cir.1995) (finding gang affiliation evidence admissible on issue of identity). Bias is a relevant material issue. *Abel,* 469 U.S. at 51, 105 S.Ct. 465.

The Supreme Court's decision in *Abel* is particularly instructive in this case. In *Abel,* the Government indicted Abel and two accomplices for bank robbery. *Id.* at 47, 105 S.Ct. 465. Both of the accomplices pleaded guilty. *Id.* One of those accomplices, Kurt Ehle, testified against Abel. The defense called an uninvolved person, Robert Mills, as a witness. *Id.* Mills testified that prior to trial Ehle had told Mills that Ehle intended falsely to inculpate Abel in exchange for leniency from the Government. *Id.* at 47–48, 105 S.Ct. 465. On cross-examination, Mills denied knowledge of any secret prison gangs. *Id.* at 48, 105 S.Ct. 465. The trial court permitted the prosecution to impeach Mills's testimony by calling Ehle, who explained that Abel, Mills, and he were all members of

the Aryan Brotherhood, a prison gang, the members of which would perjure themselves for one another. *Id.*

The Supreme Court placed its imprimatur on the use of gang affiliation evidence to establish bias. The Court noted that district courts have broad discretion with respect to the admission of evidence. "Assessing the probative value of common membership in any particular group, and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 and ultimately, if the evidence is admitted, for the trier of fact." *Id.* at 54, 105 S.Ct. 465. The Court concluded that the district court had not abused its discretion when it admitted the gang affiliation evidence because the district court was sensitive to and had taken steps to minimize any undue prejudice.[2] *Id.* at 54–55, 105 S.Ct. 465.

■ The facts of the instant case fit nicely within *Abel*'s stencil. As did the defendant in *Abel,* the defendant here, Takahashi, called an exculpatory witness. That witness, Satake, admitted that both he and Takahashi were members of the Yakuza, establishing a proper foundation for the admission of gang affiliation evidence. *See United States v. Keys,* 899 F.2d 983, 986–87 (10th Cir.1990) (noting that under *Abel,* proponent of gang affiliation evidence must establish foundation that both defendant and exculpatory witness are members of same gang). However, Satake denied that any oaths of loyalty were involved. As relevant evidence of bias, the Government then introduced expert testimony that Yakuza members do indeed swear oaths of total loyalty and have been known to "take the blame" for other Yakuza members.

■ The district court recognized the need to prevent undue prejudice. The court gave heed to the arguments on both sides and offered to give a limiting instruction.[3] Furthermore, the district court sought to stave off any undue prejudice by eliciting a stipulation from the Government that the Government would not attempt to introduce photographs of Takahashi's Yakuza tattoos as evidence of Yakuza membership. Although the district court did not prohibit the use of the word "Yakuza", it is clear that the district court in this case, like the trial court in *Abel,* was sensitive to the potential for undue prejudice and sought to minimize it. The lesson from *Abel* is not that a district court may admit relevant gang affiliation evidence only if it mimics the *Abel* court's actions, but rather that a district court does not abuse its discretion in admitting relevant gang affiliation evidence when it takes steps to minimize any undue prejudice that could flow therefrom. *See Hankey,* 203 F.3d at 1173 (applying *Abel* and finding that district court did not err in admitting gang affiliation evidence because district court had taken steps that, although not identical to those taken in *Abel,* minimized undue prejudice).

■ The similarity between the instant case and *Abel* is striking. Evidence that Satake and Takahashi were members of a gang that required oaths of total loyalty was relevant to the issue of bias. The district court recognized that this evidence was prejudicial as, indeed, most evidence should be. However, because the district court sought to prevent any undue prejudice, it did not abuse its discretion when it admitted the gang affiliation evidence.

### III. *U.S.S.G. § 2D1.2*

Takahashi was convicted of (1) conspiracy to possess with intent to distribute and to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a) and 846 and (2) possession with intent to distribute meth-

---

**2.** Specifically, the district court in *Abel* gave heed to all arguments on both sides, prohibited the use of the name "Aryan Brotherhood", and offered to give a limiting instruction. *Abel,* 469 U.S. at 54, 105 S.Ct. 465.

**3.** Although not in the record on appeal, Takahashi admits in his brief that the district court gave a limiting instruction.

amphetamine in violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 2. Notably, Takahashi was not charged with a violation of 21 U.S.C. § 860, distribution near schools, nor conspiracy to violate 21 U.S.C. § 860, and the proximity of a school to the location of the offense did not appear in the indictment. Nevertheless, because the offenses occurred near a school, the district court calculated Takahashi's sentence pursuant to U.S.S.G. § 2D1.2.

█ Sentencing Guideline § 2D1.2, an offense guideline often improperly labeled an "enhancement," establishes a higher base offense level for drug offenses that occur near protected locations such as schools. U.S.S.G. § 2D1.2. Although the offenses for which Takahashi was convicted occurred near a school, proximity to a school was not an element that the Government was required to prove in order to convict for the offenses charged in the indictment. Because proximity to a school was not an element of the crimes of conviction, Takahashi argues that the district court improperly calculated the base offense level pursuant to § 2D1.2. We agree.

We review *de novo* a district court's interpretation and application of the Sentencing Guidelines. *United States v. Crawford*, 185 F.3d 1024, 1026 (9th Cir. 1999) (*citing United States v. Bailey*, 139 F.3d 667, 667 (9th Cir.1998)).

Calculating the appropriate sentence under the Sentencing Guidelines is a nine-step process. *Crawford*, 185 F.3d at 1026. The first step for a court applying the Guidelines is to determine the most applicable offense guideline from Chapter Two of the Guidelines. U.S.S.G. §§ 1B1.1(a), 1B1.2(a). The Guidelines provide that the proper offense guideline is the one most applicable to the offense of conviction, "*i.e.*, the offense conduct charged in the count of the indictment or information of which the defendant was convicted." *Id.* § 1B1.2(a); *see id.* Application Note 1 ("As a general rule, the court is to use the guideline section from Chapter Two most applicable to the offense of conviction."); *Braxton v. United States*, 500 U.S. 344, 346, 111 S.Ct.

1854, 114 L.Ed.2d 385 (1991) (same). The Statutory Index in Appendix A provides a list of statutory offenses and their corresponding offense guidelines to which courts should turn for guidance. *Id.* App. A. The Index indicates that Guideline § 2D1.1 is the most applicable offense guideline for convictions under 21 U.S.C. § 841(a). *Id.* The question in the instant case is whether the fact that the offense occurred near a school makes § 2D1.2 the most applicable offense guideline.

█ The Ninth Circuit addressed this issue in *United States v. Crawford*, 185 F.3d at 1026–29. In *Crawford*, the defendant pleaded guilty to distributing and possessing with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a). *Id.* at 1025. The sentencing court *sua sponte* selected Guideline § 2D1.2 as the most applicable offense guideline because the offense occurred within 1000 feet of a school. *Id.* at 1026. Crawford appealed, contending that the district court should have sentenced him under § 2D1.1. *Id.* Agreeing with the defendant, this Court stated that Guideline § 2D1.1 is presumptively the most applicable offense guideline for convictions under 21 U.S.C. § 841(a). *Id.* at 1027 (*citing* U.S.S.G. § 1B1.2(a); *United States v. Chandler*, 125 F.3d 892, 897 (5th Cir.1997)). That the offense giving rise to a § 841(a) conviction occurred near a school will not overcome that presumption. *Id.* at 1028 ("[S]chool proximity does not play a role in determining the offense level for a violation of 21 U.S.C. § 841(a)."). In this Circuit, courts generally may not consider relevant conduct that was not charged and of which the defendant was not convicted when selecting the most applicable offense guideline under U.S.S.G. § 1B1.2. *United States v. Lawton*, 193 F.3d 1087, 1094 (9th Cir.1999) (*citing Crawford*, 185 F.3d at 1028).

Crawford demonstrates that the district court in the instant case erred to the extent that it applied Guideline § 2D1.2 in calculating Takahashi's base offense level for the § 841(a) conviction. However,

*Crawford* is not the end of the analysis. Takahashi was also convicted of conspiracy to violate § 841(a) under 21 U.S.C. § 846. Thus, the question remains as to whether § 2D1.2 is the most applicable guideline for Takahashi's § 846 conviction.

■ The Statutory Index in Appendix A of the Sentencing Guidelines lists several offense guidelines for conspiracy convictions under 21 U.S.C. § 846, one of which is § 2D1.2. U.S.S.G.App. A. Simply because a statutory offense has more than one corresponding offense guideline, however, does not mean that a sentencing court is free to select any of the corresponding guideline sections. Rather, the court must determine which of those guidelines is the most applicable under the circumstances of that particular case.

The Introduction to the Statutory Index provides that when "more than one guideline section is referenced for the particular statute, [courts should] use the guideline most appropriate for *the nature of the offense conduct charged in ·the count of which the defendant was convicted.*" *Id.* Introduction; *see id.* § 1B1.2 Application Note 1 ("When a particular statute proscribes a variety of conduct that might constitute the subject of different offense guidelines, the court will determine which guideline section applies based upon the nature of the offense conduct charged in the count of which the defendant was convicted."). The court cannot consider relevant but uncharged conduct at this stage of the Guidelines process. *Lawton,* 193 F.3d at 1094; *cf. Braxton,* 500 U.S. at 346, 111 S.Ct. 1854. The sole exception to this general rule is when a plea agreement contains a stipulation that specifically establishes a more serious offense. U.S.S.G. § 1B1.2(a); *Braxton,* 500 U.S. at 346, 111 S.Ct. 1854. In determining the nature of the offense conduct for a conspiracy conviction, "a court must necessarily consider the object of the conspiracy." *Crawford,* 185 F.3d at 1028 (*citing* U.S.S.G. §§ 1B1.2(a), 2X1.1(a)).

The object and the nature of the instant conspiracy was to violate 21 U.S.C. § 841(a). The indictment does not charge that the object of the conspiracy was to distribute drugs near a school. As a result, the most applicable offense guideline is the offense guideline that corresponds with the underlying substantive offense, 21 U.S.C. § 841(a). In this respect, *Crawford* instructs that § 2D1.1 is the appropriate offense guideline.

The government, relying on § 1B1.3 (Relevant Conduct) and its application notes, argues that the relevant but uncharged conduct of the Defendant may be considered along with the offense conduct charged in selecting an offense guideline. Section 1B1.3, however, is the next step in the Guidelines process. Section 1B1.3 relates to enhancements, adjustments within the offense guideline and departures, all considered after the offense guideline is chosen on the basis of the offense conduct charged. U.S.S.G. § 1B1.2(b) (*"After* determining the appropriate offense guideline section ... determine the applicable guideline range in accordance with § 1B1.3 (Relevant Conduct)") (emphasis added). As we stated in *Lawton,* "Relevant conduct may not be used to select a guideline under § 1B1.2. Relevant conduct may be considered only in the imposition of guidelines enhancements and adjustments, once a guideline has been selected." 193 F.3d at 1094 (citations omitted).

In sum, § 2D1.1 is the most applicable offense guideline for both of the convictions at issue. It was error for the district court to rely on U.S.S.G. § 2D1.2 in calculating Takahashi's base offense level. Takahashi's sentence is vacated and the case is remanded for resentencing consistent with this opinion.

### IV. *U.S.S.G. § 3C1.1 two-level enhancement*

■ In sentencing Takahashi, the district court applied a two-level enhancement pursuant to U.S.S.G. § 3C1.1 because Takahashi's escape from the correctional facility prior to his sentencing hearing obstructed the

administration of justice. Takahashi argues that although he did escape, § 3C1.1's two-level enhancement for obstructing the administration of justice should not apply because his short absence and voluntary return did not affect his sentencing proceeding and that, therefore, he did not willfully obstruct anything. This argument is without merit.

We review *de novo* a district court's interpretation and application of the Sentencing Guidelines but review for clear error the findings of fact that the district court made when applying a particular Guidelines provision. *United States v. Luca,* 183 F.3d 1018, 1021 (9th Cir.1999) (*citing United States v. Shrestha,* 86 F.3d 935, 938 (9th Cir.1996); *United States v. Mares–Molina,* 913 F.2d 770, 772 (9th Cir. 1990)).

 Section § 3C1.1 of the Sentencing Guidelines provides:

> If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1. As Takahashi points out, when interpreting and applying the Sentencing Guidelines, "courts should always consider the [accompanying] commentary, regardless of how clear the guideline may appear on its face." *United States v. Anderson,* 942 F.2d 606, 612 (9th Cir.1991) (*en banc*), *abrogated on other grounds by, Stinson v. United States,* 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). As application Note 4(e) to § 3C1.1 points out, "escaping or attempting to escape from custody before trial or sentencing" is the kind of conduct to which § 3C1.1 applies.

For the purposes of this enhancement, it is irrelevant whether the defendant succeeds in actually obstructing anything. *United States v. Draper,* 996 F.2d 982, 986 (9th Cir.1993) (*citing United States v. Morales,* 977 F.2d 1330, 1331 (9th Cir.1992)). "It is sufficient that the conduct in question has the potential for ob-

structing the ... sentencing of the instant offense." *Id.* (*citing United States v. Baker,* 894 F.2d 1083, 1084 (9th Cir.1990)). Moreover, because this enhancement applies to *attempts* to escape, the duration of an effected escape is immaterial.

Takahashi stipulated that he escaped. The commentary to § 3C1.1 makes it clear that the two-level enhancement applies to escapes. Relevant case law indicates that the defendant need not actually succeed in obstructing anything for this provision to apply. By escaping, Takahashi willfully created the potential for obstruction. The district court did not err in applying the two-level enhancement pursuant to U.S.S.G. § 3C1.1.

AFFIRMED IN PART; REVERSED IN PART.