Commonwealth of the NORTHERN MARIANA ISLANDS, Plaintiff—Appellee,

v.

Jesse James Babauta CAMACHO, Defendant—Appellant.

No. 02–10354.

D.C. Nos. CR–99–00018–GA, CR–98–00175–B.

United States Court of Appeals, Ninth Circuit.

Argued (by telephone) and Submitted May 6, 2003.

Decided May 29, 2003.

---

* Honorable Charles R. Breyer, United States District Judge for the Northern District of California, sitting by designation.

708

Before LEAVY, RYMER, and T.G. NELSON, Circuit Judges.

## MEMORANDUM *

Jesse James Babauta Camacho appeals his conviction following a jury trial for first degree murder in the Commonwealth of the Northern Mariana Islands (CNMI). We have jurisdiction pursuant to 48 U.S.C. § 1824 to review all rulings by the CNMI Supreme Court in this case except for those that turn on its interpretation of 6 CMC §§ 201, 251(d), and 5103. We affirm in part and dismiss in part.

### I

■ Camacho contends that he was convicted on the basis of guilt by association because of gang-related evidence. However, the trial court did not abuse its discretion in admitting REDRUM evidence because it explained the context in which Camacho told Ian to kill Antonio and why Ian did as he was told. This was relevant to Ian's credibility and to Camacho's complicity in Antonio's murder, both material issues at trial. *United States v. Takahashi,* 205 F.3d 1161, 1164 (9th Cir.2000); *United States v. Santiago,* 46 F.3d 885, 889 (9th Cir.1995). Although a number of references were made to the gang, neither the evidence nor argument smacked of guilt by association. *See Mitchell v. Prunty,* 107 F.3d 1337, 1342 (9th Cir.1997) (overruled on other grounds by *Santamaria v. Horsley,* 133 F.3d 1242 (9th Cir. 1998)).

### II

■ Camacho argues that his conviction violates due process because the evidence was insufficient to show that he acted with specific intent and because Ian's testimony was incredible on its face. We disagree. Ian's testimony that Camacho threatened to kill him and his family if he did not murder Antonio, and that Camacho provided the knife which Ian used to murder Antonio, was buttressed by evidence that Ian had been beaten when he initially refused to join REDRUM and that he had earlier been ordered by Camacho to steal (and he had stolen) a sword from Antonio's house. In addition, Ian had been convicted of and was serving his sentence for the murder; the jury could assess whether he had anything to gain from not telling the truth. The evidence was also sufficient to show that Camacho acted with the intent to commit first degree murder, despite his testimony that the order came from a "Joe Ada." There is no evidence that such a person exists. Camacho himself gave the order directly to Ian and provided him with the murder weapon. Because we "must respect the exclusive province of the jury to determine credibility of witnesses[,]" *United States v. Boone,* 951 F.2d 1526, 1536 (9th Cir.1991), we cannot say that no rational juror could have found the essential elements beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

### III

■ Camacho's claim that his due process rights were violated because the trial court did not permit him to raise the common law defense of being an aider and abettor to first degree murder rather than a principal fails because the CNMI Supreme Court determined that 6 CMC §§ 201 and 251(d) abolished any common law distinction between a principal and an aider or abettor. We are not persuaded that the supreme court's interpretation of local law is "untenable or amounts to a subterfuge to avoid federal review of a constitutional violation." *Sonada v. Cabrera,* 189 F.3d 1047, 1049 (9th Cir.1999) (cit-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

ing *Ferreira v. Borja,* 1 F.3d 960, 962 (9th Cir.1993)). Accordingly, its construction is not reviewable, and by definition, Camacho's due process rights were not violated.

Camacho's claim that he could not be tried as an adult on a charge of aiding and abetting murder fails for the same reason. The CNMI Supreme Court determined that charging Camacho with aiding and abetting murder is equivalent to charging him with murder for purposes of 6 CMC § 5103, and this interpretation of the Commonwealth criminal code is neither untenable nor a subterfuge to avoid federal review. Therefore, we lack jurisdiction to review this issue as well.

### IV

■ Camacho faults the prosecutor's comment in closing argument to the effect that no one had come forward to rebut evidence of what Camacho had said. However, whether or not the prosecutor's comment was error, it is harmless. *United States v. Velarde–Gomez,* 269 F.3d 1023, 1029, 1034 (9th Cir.2001) (en banc). The prosecutor did not argue that *Camacho* failed to come forward. Witnesses other than Camacho could have explained the statements attributed to him or testified that he did not make them. *See United States v. Mayans,* 17 F.3d 1174, 1185 (9th Cir.1994). The focus was on what Camacho said, not on an inference of guilt from silence. Further, both the prosecutor and the trial judge emphasized that Camacho had the right not to testify and that no adverse inferences could be based on his failure to take the stand. Substantial evidence linked Camacho to the murder. In these circumstances, the comment could not have affected the verdict.

### V

■ Camacho cites other comments which he argues amounted to prosecutorial misconduct that deprived him of due pro-

cess. While we agree that the prosecutor should not have evoked sympathy for Antonio, it was not the sort of plain error that warrants reversal. It was a passing reference in the context of an argument that the jury should base its verdict on the facts, not on sympathy for Camacho on account of his youth.

To the extent that one or two of the prosecutor's statements appear to vouch for Ian, none implied extra-record knowledge, the trial judge gave a curative instruction, and there was substantial evidence of Camacho's guilt. Although the prosecutor might have phrased his comments about Ian's credibility more felicitously, in the main his comments were grounded in what the prosecutor believed the jury could infer from the evidence. The inferences were appropriate, and we cannot say that the arguments materially affected the fairness of the trial. *See United States v. Necoechea,* 986 F.2d 1273, 1278 (9th Cir.1993).

The prosecutor's statement about Ian being Camacho's "gun" is nothing but a crude analogy to explain how Camacho used Ian to kill Antonio. Likewise, the prosecutor's "I believe" statement that Camacho contends indicates belief that the defendant ordered the murder is equally susceptible to the interpretation that it expressed the prosecutor's belief that the jurors were reasonable. In any event, neither statement impermissibly expresses an opinion about Camacho's guilt that requires reversal.

The prosecutor's reference in rebuttal to photographs and the autopsy that were not in evidence came in the course of commenting about the thirty-seven stab wounds that were in evidence. The point was never completed, as the trial judge interrupted immediately. It is clear beyond a reasonable doubt that the jury would have returned a guilty verdict without this fleeting reference.

Finally, as we have explained, the prosecutor's mention of the gang was not inappropriately calculated to arouse the passions or prejudices of the jury but served to explain the government's theory of the case. *See United States v. Leon–Reyes,* 177 F.3d 816, 822–23 (9th Cir.1999) (citing *Viereck v. United States,* 318 U.S. 236, 247–48, 63 S.Ct. 561, 87 L.Ed. 734 (1943)).

### VI

The cumulative impact of the few errors that did occur is harmless given the evidence of Camacho's guilt and the trial judge's instructions to the jury. Neither reversal nor a new trial is indicated.

AFFIRMED IN PART AND DISMISSED IN PART.