# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

MICHAEL MCENRY,
          *Defendant-Appellant.*

No. 10-10433

D.C. No.
1:09-cr-048
OWW

OPINION

Appeal from the United States District Court
for the Eastern District of California
Oliver W. Wanger, Senior District Judge, Presiding

Argued and Submitted
July 22, 2011—San Francisco, California

Filed October 13, 2011

Before: A. Wallace Tashima and Johnnie B. Rawlinson,
Circuit Judges, and Terry J. Hatter, Senior District Judge.*

Opinion by Judge Tashima

---

*The Honorable Terry J. Hatter, Senior United States District Judge for the Central District of California, sitting by designation.

18903

## COUNSEL

Eric V. Kersten, Assistant Federal Defender, Fresno, California, for the defendant-appellant.

Karen A. Escobar, Assistant United States Attorney, Fresno, California, for the plaintiff-appellee.

**OPINION**

TASHIMA, Circuit Judge:

Michael McEnry ("McEnry") was convicted, on a plea of guilty, of serving as an airman without an airman's certificate, in violation of 49 U.S.C. § 46306(b)(7). He appeals from his sentence on the ground that the district court procedurally erred by sentencing him pursuant to U.S.S.G. § 2A5.2, rather than U.S.S.G. § 2B1.1. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and we vacate the sentence and remand for resentencing.

**I.**

On January 5, 2009, McEnry landed a Cessna 210F aircraft at the Eastern Sierra Regional Airport in Bishop, California. The circumstances of his landing were unusual: he did not communicate with the airport by radio during his approach and landing, and he touched down significantly farther along the runway than would be the case on a normal landing. When the plane did land, it overran the runway. McEnry's behavior on getting out of the plane was also unusual. He tied the plane down at its two wings, but neglected to tie down the tail, as one would normally do. He did not walk purposefully toward the terminal, but wandered about before approaching it. On arriving at the terminal, he asked where he was and claimed that he had flown through military airspace, during which time military aircraft flew alongside him and fired flares. Someone at the airport called the police, reporting that McEnry might have been under the influence while flying.[1]

---

[1] The cause of McEnry's erratic behavior is disputed. The district court ultimately ruled that, regardless of the cause, McEnry was in a condition in which he should not have been flying, and neither party contends that the issue has any bearing on the selection of the guideline under which McEnry should have been sentenced.

At the time McEnry landed, another aircraft had been scheduled to take off, but the pilot delayed his launch because he saw McEnry's plane coming in before he began his take-off. On investigating McEnry, the Federal Aviation Administration ("FAA") determined that he had no airman's certificate, *i.e.*, a pilot's license. He had been issued a student pilot's certificate in 1986, which expired 24 months after its issuance.[2] The FAA also determined that the aircraft had not had a required annual inspection since October 2004 and had a number of mechanical problems, leading it to conclude that the plane should not be flown. Before the plane was ultimately flown out of Eastern Sierra Regional Airport, the FAA required "some bare minimum" maintenance that gave the FAA agent "some comfort in saying . . . you're okay to take this one-time flight to a place where all the rest of the repairs could be done." An FAA agent testified that "there was a lot that needed to be done" to make McEnry's plane airworthy.

McEnry was charged with violating 49 U.S.C. §§ 46306(b)(7), which prohibits knowingly and willfully serving or attempting to serve as an airman without an airman's certificate authorizing such service,[3] and 46306(c)(2), which provides for a higher statutory maximum if the violation is related to transporting a controlled substance by aircraft or aiding or facilitating certain controlled substance violations. He pled guilty, without a plea agreement, to violating § 46306(b)(7) after the government agreed to move to dismiss the § 46306(c)(2) charge; however, the government reserved its right to present its evidence with regard to controlled substances at sentencing.[4]

---

[2]There is some evidence that, subsequent to his arrest in this case, McEnry made false statements in his application for a pilot's license. As with the cause of McEnry's behavior, this evidence has no bearing on the question before the panel.

[3]This statute applies only to aircraft not used to provide air transportation. 49 U.S.C. § 46306(a).

[4]At sentencing, the government presented a variety of evidence suggesting that McEnry was involved in drug trafficking. Neither party argues

No sentencing guideline expressly applies to McEnry's crime of conviction. 49 U.S.C. § 46306(b); U.S.S.G. App'x A. Accordingly, the guidelines specify that the district court must "apply the most analogous offense guideline" or, "[i]f there is not a sufficiently analogous guideline," sentence the defendant pursuant to 18 U.S.C. § 3553. U.S.S.G. § 2X5.1. The Probation Officer recommended that the court apply § 2A5.2(a)(2)(A), the guideline for interference with a flight crew member or interference with the dispatch, navigation, operation, or maintenance of a mass transportation vehicle, where the offense involved recklessly endangering the safety of an airport or aircraft. Under this guideline, McEnry's Base Offense Level was 18. The government argued that this was the correct guideline, because the offense involved recklessly endangering the safety of an aircraft. McEnry contended that "[i]t is questionable whether any guideline is sufficiently analogous," and argued that four other guidelines, including § 2B1.1(b)(13), were more analogous to his offense. Section 2B1.1 provides for a Base Offense Level of 6. Section 2B1.1(b)(13) establishes an enhancement for reckless risk of death or serious bodily injury; this enhancement would raise McEnry's Offense Level to 14.

Following an evidentiary hearing, the court concluded that although § 2A5.2(a)(2) was "not that suitable and not that analogous really, [it was] the only guideline that is particularly close in terms of conduct." The court gave McEnry a three-point downward adjustment for acceptance of responsibility and found him to be in Criminal History Category I. Determining that "given . . . the overall totality of the circum-

---

that this evidence was relevant to the determination of the correct guideline. The district court determined that the drug trafficking-related evidence is "not any evidence" which "simply doesn't approach preponderance, doesn't even approach the sufficiency to draw an inference," and concluded that it "d[id]n't find any basis in fact or law to enhance the sentence based on the evidence that's been received." The government does not contest this finding. Accordingly, this evidence is not relevant to McEnry's appeal.

stances . . . a sentence in the middle of the guidelines is a fair sentence and appropriate," the court sentenced McEnry to a 21-month term of imprisonment. This appeal followed.

## II.

We review de novo the district court's interpretation of the sentencing guidelines, and review the district court's findings of fact for clear error. *United States v. Laurienti*, 611 F.3d 530, 551-52 (9th Cir. 2010).[5]

## III.

The sole question in dispute is which section of the Sentencing Guidelines applies to McEnry's offense, "knowingly and willfully serv[ing] . . . as an airman without an airman's certificate authorizing [him] to serve in that capacity" when the aircraft is not used to provide air transportation. 49 U.S.C. § 46306(b)(7). The district court applied § 2A5.2, which applies, *inter alia*, to 49 U.S.C. §§ 46308 (interference with air navigation), 46503 (interference with airport security screening personnel), and 46504 (interference with flight crew members and attendants). The government contends that this was the correct provision. McEnry contends that the appropriate provision is § 2B1.1, a general fraud and deceit guideline, which applies, *inter alia*, to "knowingly and willfully serv-[ing] . . . as an airman operating an aircraft in air transportation without an airman's certificate authorizing the individual to serve in that capacity." 49 U.S.C. § 46317(a)(1).

**[1]** It is undisputed that no guideline directly applies to the offense of conviction in this case. Thus, it is also undisputed that the sentencing court must, under U.S.S.G. § 2X5.1 "apply

---

[5]There is "an intracircuit conflict as to whether the standard of review for application of the Guidelines to the facts is de novo or only for abuse of discretion," *Laurienti*, 611 F.3d at 552 (internal quotation marks omitted), but this standard of review is not determinative of this appeal.

the most analogous offense guideline" if one exists or, "[i]f there is not a sufficiently analogous guideline," sentence the defendant pursuant to 18 U.S.C. § 3553.[6] The core of the parties' dispute is how a district court should determine which guideline is "the most analogous offense guideline" under § 2X5.1. Under our standard of review, this interpretive question is properly reviewed de novo.

**[2]** Although we have not previously had the occasion to consider § 2X5.1 in depth, we have addressed the broader question of how a district court must proceed in selecting an appropriate guideline. When deciding which guideline to apply, a district court must determine the guideline section in Chapter Two (Offense Conduct) "applicable to the offense of conviction (*i.e.*, the offense conduct charged in the count of the indictment or information of which the defendant was convicted)." U.S.S.G. § 1B1.2(a). To do this, the court is to refer to the Statutory Index, Appendix A of the Guidelines, to find the offense of conviction, or, if the offense is not listed in the Statutory Index, apply § 2X5.1 to find the most analogous guideline. *Id.* Applying the language quoted above, we have previously emphasized that it is not the defendant's underlying relevant conduct, but the crime of conviction, that governs the selection of the appropriate guideline section. Thus, in *United States v. Lawton*, 193 F.3d 1087, 1094 (9th Cir. 1999), *superseded in part on other grounds*, U.S.S.G.

---

[6]Section 2X5.1 provides, in relevant part:

> If the offense is a felony for which no guideline expressly has been promulgated, apply the most analogous offense guideline. If there is not a sufficiently analogous guideline, the provisions of 18 U.S.C. § 3553 shall control, except that any guidelines and policy statements that can be applied meaningfully in the absence of a Chapter Two offense guideline shall remain applicable.

U.S.S.G. § 2X5.1. Further guidance is provided by the background comment to the section: "The court is required to determine if there is a sufficiently analogous offense guideline and, if so, to apply the guideline that is most analogous." U.S.S.G. § 2X5.1 cmt. background.

App'x C. para. 604 (2000), *as recognized in United States v. Barragan-Espinoza*, 350 F.3d 978, 983 (9th Cir. 2003), we noted that a district court may not use relevant conduct to select whatever guideline it wants; relevant conduct may be considered only in the application of enhancements and adjustments once a guideline has been selected.

The court developed this line of reasoning in *United States v. Takahashi*, 205 F.3d 1161 (9th Cir. 2000), and *United States v. Crawford*, 185 F.3d 1024 (9th Cir. 1999). In *Crawford*, multiple guidelines appeared to fit the circumstances of the defendant's crime. The defendant was convicted of violating 21 U.S.C. § 841(a), which is generally punished under § 2D1.1. 185 F.3d at 1025-27; *see* U.S.S.G. App'x A. The selection of a guideline was complicated, however, by evidence that the defendant committed the crime within 1,000 feet of a school, which, if charged under 21 U.S.C. § 860, would result in the defendant's being sentenced under § 2D1.2. *Crawford*, 185 F.3d at 1025-26. Although Crawford's plea agreement provided for dismissal of all counts charging the school proximity element, the district court nonetheless applied the latter guideline. *Id.* We reversed, concluding that § 1B1.2(a)'s admonition that the court "[d]etermine the offense guideline section in Chapter Two (Offense Conduct) most applicable to the offense of conviction (*i.e.*, the offense conduct charged in the count of the indictment . . . of which the defendant was convicted)" generally requires selecting the guideline specific to the statute of conviction from the Statutory Index of the Guidelines. *Crawford*, 185 F.3d at 1027 (alterations in original) (quoting U.S.S.G. § 1B1.2 (1998)). Only after the correct Chapter Two guideline had been selected was the district court to select the appropriate base offense level and, after that, make the adjustments within that guideline section. *Id.* Because only § 2D1.1 was listed in the statutory table as an appropriate guideline for 21 U.S.C. § 841(a), that guideline was "presumptively the guideline 'most applicable to the offense of conviction' "; other relevant conduct could be considered only in ascertain-

ing which adjustments to apply within the guideline section. *Id.* at 1027-28 (quoting U.S.S.G. § 1B1.2(a) (1998)).

*Takahashi* involved facts similar to *Crawford,* but with one key distinction. In *Crawford*, the defendant had been indicted on four counts, which were later dismissed, charging distribution of cocaine base within 1,000 feet of a school. *Id.* at 1025. Accordingly, there was no count of conviction for which § 2D1.2 was the appropriate guideline. In *Takahashi*, by contrast, the defendant was convicted of violating 21 U.S.C. § 846, as well as 21 U.S.C. § 841(a). *See* 205 F.3d at 1163. Under § 846, unlike under § 841(a), § 2D1.2 is listed as one of several appropriate guidelines in the Statutory Index. *Id.* at 1167. Accordingly, we were required to consider the choice between multiple guidelines authorized by the Statutory Index.

As in *Crawford*, we concluded that use of § 2D1.2 was improper. *Id.* We noted that the guidelines provide that "when 'more than one guideline section is referenced for the particular statute, [courts should] use the guideline most appropriate for *the nature of the offense conduct charged in the count of which the defendant was convicted.*' " *Id.* (quoting U.S.S.G. App'x A introduction) (alterations and emphasis in the original).[7] We also noted that a district court "cannot consider relevant but uncharged conduct at this stage of the Guidelines process." *Id.* Some facts of a given case, however, may be necessary to select the relevant guideline. For example, " 'a court must necessarily consider the object of the conspiracy' " when determining the nature of the offense conduct for conspiracy. *Id.* (quoting *Crawford*, 185 F.3d at 1028). In *Takahashi*, we looked to the indictment to determine what facts were necessary for the selection of the guideline offense, as opposed to relevant but uncharged conduct, to make that

---

[7]The words "the nature of" were removed from the Statutory Index by Amendment 591, effective November 1, 2000. U.S.S.G. App'x C para. 591.

determination. *Id.* We made clear that the factual inquiry at that stage was extremely limited, noting that " '[r]elevant conduct may not be used to select a guideline under § 1B1.2. Relevant conduct may be considered only in the imposition of guidelines enhancements and adjustments, once a guideline has been selected.' " *Id.* (quoting *Lawton*, 193 F.3d at 1094).

Shortly after we decided *Crawford* and *Takahashi*, the Guidelines were amended in light of the issues addressed in those cases. *See* U.S.S.G. App'x C para. 591. The amendment, which was "intended to emphasize that the sentencing court must apply the offense guideline referenced in the Statutory Index," unless the case fell into a single specified exception, confirmed our interpretation of the interrelationship of § 1B1.2(a) and the Statutory Index. *Id.* It removed an application note to § 1B1.2 that "provided that in many instances it would be appropriate for the court to consider the actual conduct of the offender, even if such conduct did not constitute an element of the offense." *Id.* Amendment 591 also revised the introduction to the Statutory Appendix and § 1B1.1(a), removing a sentence suggesting that in atypical cases the defendant's offense conduct should be considered in selecting a guideline section from the former, and a sentence indicating that the Statutory Index merely "assist[s]" in the determination of the proper guideline from the latter.[8] *See id.*; *compare*

---

[8]To the extent that some of our cases rely on the excised language (directly or indirectly) to suggest that relevant conduct may be used to select the appropriate guideline pursuant to U.S.S.G. § 1B1.2(a) and the Statutory Index, they have been superseded by this amendment. *See, e.g.*, *United States v. Lomow*, 266 F.3d 1013, 1019 n.2 (9th Cir. 2001) (quoting, in dicta, *Crawford*'s reference to the later-excised language and citing *United States v. Cambra*, 933 F.2d 752 (9th Cir. 1991), which relies on superseded language); *United States v. Fulbright*, 105 F.3d 443 (9th Cir. 1997), *overruled on other grounds by United States v. Heredia*, 483 F.3d 913 (9th Cir. 2007); *United States v. Van Krieken*, 39 F.3d 227, 230 (9th Cir. 1994); *United States v. Hanson*, 2 F.3d 942, 947 (9th Cir. 1993); *Cambra*, 933 F.2d at 754-55; *cf. United States v. Aragbaye*, 234 F.3d 1101, 1104 (9th Cir. 2000) (applying 1997 guidelines).

U.S.S.G. § 1B1.1(a) & App'x A introduction (1998) *with* U.S.S.G. § 1B1.1(a) & App'x A introduction (2000); *see also United States v. Johnson*, 297 F.3d 845, 867 (9th Cir. 2002) ("[T]he Sentencing Guidelines have been amended to clarify that courts should deviate from the offense level provided by Appendix A only in cases involving the 'stipulation exception' in § 1B1.2(a), which does not apply here.") (footnotes omitted).

**[3]** The amended Guidelines, together with *Crawford* and *Takahashi,* establish the principles which govern the selection of the applicable guideline for a given offense. As relevant here, those principles are that the selection of a guideline is primarily a statutory question, and to the extent the court is required to look to the facts to select a guideline, the court is limited to the conduct charged in the indictment.

**[4]** These principles necessarily govern the selection of a guideline under § 2X5.1. Section 1B1.2 provides two basic means of selecting a relevant Chapter Two guideline: the Statutory Index and § 2X5.1. U.S.S.G. § 1B1.2(a).[9] We conclude that the general language interpreted by *Crawford* and *Takahashi*, which precedes the paragraph setting forth these two means, applies to both. Not only does the structure of the provision suggest this reading, but the language we interpreted in *Crawford* and *Takahashi* is nearly identical to the

---

[9]Section 1B1.2(a) provides, in relevant part:

Determine the offense guideline section in Chapter Two (Offense Conduct) applicable to the offense of conviction (*i.e.*, the offense conduct charged in the count of the indictment or information of which the defendant was convicted). . . .

Refer to the Statutory Index (Appendix A) to determine the Chapter Two offense guideline, referenced in the Statutory Index for the offense of conviction. . . . For statutory provisions not listed in the Statutory Index, use the most analogous guideline. *See* § 2X5.1 (Other Offenses).

U.S.S.G. § 1B1.2(a).

language of § 2X5.1. *Compare Crawford*, 185 F.3d at 1027 (" '[d]etermine the offense guideline section in Chapter Two (Offense Conduct) *most applicable* to the offense of conviction . . . .' ") (emphasis added) (quoting U.S.S.G. § 1B1.2(a) (1998)) *with* U.S.S.G. § 2X5.1 ("apply the *most analogous* offense guideline") (emphasis added).[10] Moreover, we have previously looked to § 1B1.2 in the § 2X5.1 context. *See United States v. Van Krieken*, 39 F.3d 227, 230-31 (9th Cir. 1994).[11]

---

[10]Section 1B1.2(a) was amended effective November 1, 2000, to remove the word "most". U.S.S.G. App'x C para. 591 (2000). While this amendment makes its language appear less like § 2X5.1, it was, as noted above, "intended to emphasize that the sentencing court must apply the offense guideline referenced in the Statutory Index." *Id.* Thus, while the amendment makes the language of §§ 1B1.2(a) and 2X5.1 slightly less analogous, it also strengthens the underlying point: the offense of conviction and its elements are what matter most in selecting an appropriate guideline.

[11]Although we rely on our own Circuit law and the plain language of the Guidelines to decide this case, we note that our conclusion that the application of § 2X5.1 to select an appropriate guideline for offenses not listed in the Statutory Index is in the first instance a statutory question determined by the elements of the offense is consistent with the dominant approach to § 2X5.1 employed by our sister circuits. That approach, which was set forth in depth in *United States v. Osborne*, 164 F.3d 434 (8th Cir. 1999), requires a "determination as to whether there is a sufficiently analogous guideline to the defendant's crime" which "most generally will involve comparing the elements of federal offenses to the elements of the crime of conviction" prior to a more fact-bound analysis over which guideline is "most analogous" if there is more than one "sufficiently analogous" guideline. *Id.* at 437-38; *accord United States v. Saac*, 632 F.3d 1203, 1213 (11th Cir. 2011) ("The most analogous guideline contemplated by section 2X5.1 is the guideline that applies to the most analogous statute of conviction.") (internal quotation marks omitted); *United States v. Cothran*, 286 F.3d 173, 177 (3d Cir. 2002) (adopting the approach of *Osborne*); *United States v. Calbat,* 266 F.3d 358, 363 (5th Cir. 2001) (quoting *United States v. Nichols*, 169 F.3d 1255, 1270 (10th Cir. 1999), for the proposition that "[w]hether there is a sufficiently analogous guideline to a particular crime is generally a task of comparing the elements of the defendant's crime of conviction to the elements of federal offenses already covered by a specific guideline"); *Nichols*, 169 F.3d at 1270; *but cf. with United*

**[5]** Applying these principles to this case, we hold that the district court erred in selecting § 2A5.2 as the most analogous guideline. In concluding that § 2A5.2 was the appropriate guideline to apply to McEnry's offense, the district court remarked that § 2A5.2 "isn't directly applicable for the offense, which is operating without the airman's certificate." Explaining its choice, it noted that § 2A5.2 "does, if you will, raise or track some of the kinds of risks that are raised."[12] Thus, the district court based its choice not on the elements of the offense or the facts alleged in the indictment, but on the defendant's particular relevant conduct and the risk it created.[13]

**[6]** Considering the statute of conviction and excluding relevant uncharged conduct, by contrast, we conclude that § 2B1.1 is the correct guideline in this case. McEnry's offense

---

*States v. Brennan*, 395 F.3d 59, 72 (2d Cir. 2005) ("[T]he determination under USSG § 2X5.1 as to whether there is a single most analogous offense guideline, and, if not, how to proceed under 18 U.S.C. § 3553(b), involves the application of a guideline to the facts of a case . . . .") (internal quotation marks omitted).

[12]We note that the district court's concern about McEnry's recklessness is also addressed by the correct guideline. *See* U.S.S.G. § 2B1.1(b)(13) (enhancing the base offense level in cases involving conscious or reckless risk of death or serious bodily injury). Even in cases where the most analogous guideline does not address a particularly important "circumstance[ ] of the offense," however, a district court is within its discretion to consider that factor after correctly calculating the Guidelines range. 18 U.S.C. § 3553(a)(1); *see United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (noting that the "district court may not presume that the Guidelines range is reasonable" and that the Guidelines factor should not "be given more or less weight than any other").

[13]The indictment in this case makes no mention of recklessness. As such, we express no opinion as to whether the district court's look to the allegations in the indictment to select the appropriate guideline would have been permissible in this case. Moreover, because this case does not present a situation where more than one guideline is "sufficiently analogous" to McEnry's crime of conviction, U.S.S.G. § 2X5.1, we express no opinion about whether the court might be permitted to look to more facts in such a case.

is nearly identical to a federal offense that is listed in the Statutory Index. McEnry was convicted of violating 49 U.S.C. § 46306(b)(7), which provides that "a person shall be . . . imprisoned for not more than 3 years . . . if the person . . . knowingly and willfully serves or attempts to serve in any capacity as an airman without an airman's certificate authorizing the individual to serve in that capacity." This section, however, applies only to aircraft not used to provide air transportation. 49 U.S.C. § 46306(a). Another provision governs the same conduct in the context of providing air transportation: "An individual shall be . . . imprisoned for not more than 3 years . . . if that individual . . . knowingly and willfully serves or attempts to serve in any capacity as an airman operating an aircraft in air transportation without an airman's certificate authorizing the individual to serve in that capacity." 49 U.S.C. § 46317(a)(1). The most analogous offense to knowingly serving as an airman operating an aircraft *not* used to provide air transportation without an airman's certificate is knowingly serving as an airman operating an aircraft that *is* used to provide air transportation without an airman's certificate. *Cf. United States v. Carrillo-Hernandez*, 963 F.2d 1316, 1318 (9th Cir. 1992) ("Here, the offense most analogous to making false statements to a customs agent in the course of evading *export* restrictions is the making of false statements to a customs agent in the course of evading *import* restrictions.").

**[7]** Because the Statutory Index provides that the *only* guideline section to be applied to violations of 49 U.S.C. § 46317(a) is § 2B1.1, *see* U.S.S.G. App'x A, § 2B1.1 is also the "most analogous offense guideline" for 49 U.S.C. § 46306(b)(7). U.S.S.G. § 2X5.1; *cf. Crawford*, 185 F.3d at 1027 ("[T]he Statutory Index identifies section 2D1.1 as the appropriate guideline for violations of section 841(a). . . . Thus, for Crawford, section 2D1.1 — relating to drug trafficking — and not section 2D1.2 — relating to protected locations or individuals — is presumptively the guideline 'most appli-

cable to the offense of conviction.' ") (quoting U.S.S.G. § 1B1.2(a) (1998)).

*United States v. Fisher*, 137 F.3d 1158 (9th Cir. 1998), cited by the government, is not to the contrary. Although *Fisher* notes that "[t]he most analogous offense will vary depending on the circumstances of a particular case," it addresses a different context from the present one. *Id.* at 1167. As a catchall provision, § 2X5.1 can apply in situations other than the initial selection of a Chapter Two guideline, a situation that is governed by *Crawford* and *Takahashi*. For example, it also applies in some instances in which the relevant guideline, chosen pursuant to § 1B1.2(a), requires a look to § 2X5.1 and a resultant search for an analogous guideline. *Fisher* involves such a case. In *Fisher*, the defendant was convicted of contempt of court. 137 F.3d at 1161. Contempt has its own assigned Chapter Two guideline, § 2J1.1. That guideline provides, in full, that district judges should "[a]pply § 2X5.1 (Other Offenses)." U.S.S.G. § 2J1.1. The commentary to § 2J1.1 explicitly invites the sentencing court to consider offense conduct in applying that guideline, noting that "the nature of the contemptuous conduct, the circumstances under which the contempt was committed, the effect the misconduct had on the administration of justice, and the need to vindicate the authority of the court are highly context-dependent." U.S.S.G. § 2J1.1 cmt. 1. Because the requirements of § 1B1.2(a) are already satisfied by the selection of § 2J1.1, however, different rules apply to § 2X5.1 in that context.[14]

Finally, the government suggests for the first time in a 28(j) letter that the district court's error was harmless. That argument, however, was available at the time it filed its answering brief.[15] Accordingly, the government has waived that argu-

---

[14]We express no opinion on how § 2X5.1 is to be applied in situations other than in the initial selection of a guideline pursuant to § 1B1.2(a).

[15]The government contends that its harmless error argument was not previously available, relying on a new Seventh Circuit case, *United States*

ment. *See, e.g.*, *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ( "[O]n appeal, arguments not raised by a party in its opening brief are deemed waived."); *cf. Randle v. Crawford*, 604 F.3d 1047, 1056 (9th Cir. 2010) ("Under these circumstances, where Randle could not have raised his argument prior to filing his opening brief on appeal, and where he promptly raised the argument before us once the decision on which it is based was issued, we conclude that Randle did not waive this argument on appeal.").[16]

## IV.

[8] By relying on McEnry's uncharged relevant conduct in selecting the applicable guideline, the district court incorrectly calculated McEnry's Guidelines range. In doing so, it committed procedural error in sentencing him. *Carty*, 520 F.3d at 993. Accordingly, we vacate McEnry's sentence and remand

*v. Hill*, 2011 WL 2611301 (7th Cir. Jul. 5, 2011), cited in its 28(j) letter, in support. *Hill*, however, merely followed *United States v. Anderson*, 517 F.3d 953, 965-66 (7th Cir. 2008), on this point. *See* 2011 WL 2611301, at *10. Thus the argument is not a new one and *Hill* did not make new law on this point.

[16]Even if the government had not waived this argument, it would not have met its burden of demonstrating harmless error under the law of this circuit. *See, e.g.*, *United States v. Beng-Salazar*, 452 F.3d 1088, 1096 (9th Cir. 2006) (noting that the burden is on the government to establish harmless error in sentencing). In *United States v. Munoz-Camarena*, 631 F.3d 1028 (9th Cir. 2011), which was filed before the government's brief in this case, we noted that "[a] district court's mere statement that it would impose the same above-Guidelines sentence no matter what the correct calculation cannot, without more, insulate the sentence from remand, because the court's analysis did not flow from an initial determination of the correct Guidelines range." *Id.* at 1031. Here (and unlike in both *Hill* and *Munoz-Camarena*), the district court did not even state that it would impose the same sentence regardless of the guideline calculation. Instead, it stated that it "[did]n't see any reason to depart here," and imposed a sen-

for resentencing under the correct guideline.

**VACATED and REMANDED.**

---

tence in the middle of the Guidelines range. Under these circumstances, "[w]e are not convinced that the district court would impose the same sentence if the correct Guidelines range was 'kept in mind throughout the process.' " *Munoz-Camarena*, 631 F.3d at 1031 (quoting *Carty*, 520 F.3d at 991).